1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15

| HELEN TRUONG, and CUONG K. TRUONG, | CASE NO. 3:12-CV-01681-WQH-MDD |
|---|---|
| Plaintiffs, | ORDER |
| vs. | |
| MOUNTAIN PEAKS FINANCIAL SERVICES, INC., | |
| Defendant. | |

16

HAYES, Judge:

17

The matters before the Court are the Motion to Dismiss (ECF No. 9) and the Motion

18

for Attorneys' Fees (ECF No. 10) filed by Defendant Mountain Peaks Financial Services, Inc.

19

### PROCEDURAL HISTORY

20

On July 6, 2012, Plaintiffs Helen Truong and Cuong K. Truong ("Plaintiffs") initiated

21

this action by filing a Complaint against Defendant Mountain Peaks Financial Services, Inc.

22

(ECF No.1). Plaintiffs asserted two claims alleging fraudulent and misleading debt collection

23

practices: (1) a state law claim for violation of the Rosenthal Fair Debt Collection Practices

24

Act ("RFDCPA"), Cal. Civ. Code § 1788, et seq.; and (2) a federal law claim for violation of

25

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. *Id.* at 6.

26

On August 29, 2012, Defendant filed a Motion to Strike Plaintiff's RFDCPA claim

27

pursuant to California's anti-SLAPP (strategic lawsuit against public participation) statute.

28

(ECF No. 5-1 at 4 (citing Cal. Code Civ. P. § 425.16)).

On August 29, Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 6).

On September 4, 2012, Plaintiffs filed a First Amended Complaint, which is the operative complaint in this case.  (ECF No. 7).  In the First Amended Complaint, Plaintiff asserted a federal law claim for fraudulent and misleading debt collection practices in violation of the FDCPA. *Id.* at 7.  Plaintiff did not assert a state law claim for violation of the RFDCPA in the First Amended Complaint.

On September 9, 2012, the Court denied the Motion to Strike (ECF No. 5) and Motion to Dismiss (ECF No. 7) as moot in light of the First Amended Complaint.  (ECF No. 8).

On September 18, 2012, Defendant filed a Motion to Dismiss for lack of jurisdiction and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 9), and a Motion for Attorneys' Fees pursuant to California's anti-SLAPP statute.  (ECF No. 10).  On October 8, 2012, Plaintiffs filed oppositions to both motions.  (ECF Nos. 11, 12).  On October 15, 2012, Defendant filed replies in support of both motions.  (ECF Nos. 14, 13).  On October 18, 2012, Plaintiffs filed an objection (ECF No. 15) to the reply filed by Defendant in support of its Motion to Dismiss.  On October 18, 2012, Defendant filed a response to Plaintiff's objection.  (ECF No. 16).  On November 6, 2012, Defendant filed a Request for Judicial Notice in support of its Motion to Dismiss.  (ECF No. 17).

## MOTION TO DISMISS

### I.      Allegations of the Complaint

... 16. On or about 2005, Plaintiffs are alleged to have incurred certain financial obligations.

17. These financial obligations were primarily for personal, family or household purposes and are therefore a 'debt' as that term is defined by 15 U.S.C. §1692a(5).

18. Sometime thereafter, but before 2005, Plaintiffs allegedly fell behind in the payments allegedly owed on the alleged debt. Plaintiffs currently take no position as to the validity of this alleged debt.

19. Subsequently, but before 2005, the alleged debt was assigned, placed, or otherwise transferred, to Defendant for collection.

20. Subsequently, in an attempt to develop a payment plan between the two parties, Plaintiffs and Defendant entered into a stipulation agreement, signed by

both parties in October of 2005.

21. The stipulation entered into by the parties was drafted in its entirety by Defendant and purportedly outlined the parameters regarding payment, and rules regarding default.

22. The stipulation included an ability to 'cure' any default, upon Defendant's written notice, in the event of a default on payment.

23. The stipulation allowed Plaintiffs to cure within ten days of being notified of any alleged delinquency by Defendant.

24. The stipulation was drafted by Defendant in such a way that it appeared to the least sophisticated consumer to define such a 'cure' as the reinstatement of defaulted payments then in default, and no more.

25. This apparent written arrangement also mimicked what Plaintiff was previously told by Defendants, orally.

26. In reality, the stipulation was written by Defendant in such a way that it was vague and ambiguous, and was written with the intent to provide Defendant with the ability to demand from least sophisticated consumers immediate payment in full upon a month default when such payment was not what was agreed to, nor the intent of the parties.

27. Through this conduct, Defendant used false representations or deceptive means to collect or attempt to collect a debt or to obtain information concerning a consumer.  Consequently, Defendant violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10).

28. Through this conduct, Defendant was collecting an amount (including any interest, fee, charge, or expense incidental to the principal obligation) when such amount was not expressly authorized by the agreement creating the debt or permitted by law.  Consequently, Defendant violated 15 U.S.C. § 1692f(1).

29. On or about April 17, 2012 Plaintiffs were informed that they had supposedly defaulted on their monthly payment.

30. On or before April 27, 2012 in order to cure the apparent default, and in a show of good faith, Plaintiffs sent Defendant a check in the amount of $3,150.00, an amount far in excess of the $150.00 minimum required to cure.

31. On May 1, 2012 Plaintiffs received a letter from Defendant both rejecting the $3,150.00 payment and making a demand that Plaintiffs pay the unpaid balance of $28,438.50 in full, immediately....

32. The purpose of this sham was to force Plaintiff to pay funds that were not owed, as well as increase the amount of money Plaintiffs supposedly owed Defendant.

33. Through this conduct, Defendant used a false, deceptive, or misleading representation or means in connection with the collection of a debt. Consequently, Defendant violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10).

34. Through this conduct, Defendant used an unfair or unconscionable means

to collect or attempt to collect any debt. Consequently, Defendant violated 15 U.S.C. § 1692f.

35. Through this conduct, Defendant was collecting an amount (including any interest, fee, charge, or expense incidental to the principal obligation) when such amount was not expressly authorized by the agreement creating the debt or permitted by law. Consequently, Defendant violated 15 U.S.C. § 1692f(1).

36. In this May 1, 2012 letter, Plaintiffs attempted to change the terms of the previous agreement to make it appear Plaintiffs now had to pay the entire balance immediately.

37. The purpose of changing these terms was to force Plaintiff to pay funds at an earlier date that Plaintiff had previously agreed to pay as well as increase the amount of money Plaintiffs supposedly owed Defendant.

38. The aforementioned demand was in direct violation of the stipulation agreed to by both parties, which allowed the Plaintiffs to cure any default on a monthly payment within ten (10) days of notification of the default.

39. This was contrary to the terms of the agreement as well as the terms Defendant has previously represented to Plaintiffs.

40. Through this conduct, Defendant used a false, deceptive, or misleading representation or means in connection with the collection of a debt. Consequently, Defendant violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10) as well as 15 U.S.C. § 1692f(1).

41. Through this conduct, Defendant was collecting an amount (including any interest, fee, charge, or expense incidental to the principal obligation) when such amount was not expressly authorized by the agreement creating the debt or permitted by law. Consequently, Defendant violated 15 U.S.C. § 1692f(1).

42. Plaintiffs believe that once discovery is conducted in this matter it will be discovered that Defendants have perpetrated this fraudulent activity on a much larger group of consumers.

43. Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs.

44. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq....

(ECF No. 7 at 3-7). Plaintiffs seek actual damages and statutory damages from Defendant for each alleged violation of the FDCPA pursuant to 15 U.S.C. §§ 1692k(a)(1) and 1692k(a)(2)(A), as well as costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3). *Id.* at 7.

## II.    Requests for Judicial Notice

Defendant requests that the Court take judicial notice of an October 17, 2012 judgment

entered against Plaintiffs and in favor of Defendant in San Diego Superior Court.  (ECF No. 17 (bearing case number 847795)).  Defendant also asserts that the Court should incorporate four documents attached to its Motion to Dismiss by reference: (1) a copy of a complaint filed by Defendant against Plaintiffs on April 6, 2005 in San Diego Superior Court, alleging that Plaintiffs defaulted on two student loans and that the debt was assigned to Defendant (ECF No. 9-3 at 4 (bearing case number 847795)); (2) a copy of a Stipulation of Entry of Judgment ("Stipulation"), allegedly entered into by Plaintiffs and Defendant on October 31, 2005 in San Diego Superior Court (*Id.* at 24 (bearing case number 847795)); (3) copies of a letter and an accompanying check, dated April 22, 2012, allegedly sent by Plaintiff Helen Truong to Defendant (*Id.* at 33-34); and (4) copies of a letter, dated April 28, 2012, and an accompanying check, dated April 29, 2012, allegedly sent by Plaintiff Helen Truong to Defendant (*Id.* at 36-37).  Plaintiffs have not opposed any of these requests.

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond."  *United States v. Ritchie*, 342 F. 3d 903, 907 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b)).  However, a court may "consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *Id.* (citing *Van Buskirk v. CNN*, 284 F. 3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F. 3d 1370, 1377 (9th Cir. 1994)).

Where the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity ... is not contested" and "the plaintiff's complaint necessarily relies" on them. *Parrino v. FHP, Inc.*, 146 F. 3d 699, 705-06 (9th Cir. 1998) (quotation omitted); *see also Ritchie*, 342 F. 3d at 908 ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.  The defendant may offer such a document, and the district court may treat such a document as part

of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).”); *see also Knievel v. ESPN*, 393 F. 3d 1068, 1076 (9th Cir. 2005) (“We have extended the ‘incorporation by reference’ doctrine to situations in which the plaintiff’s claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.”). “[U]nder Fed. R. Evid. 201, a court may take judicial notice of ‘matters of public record.’” *Lee v. City of Los Angeles*, 250 F. 3d 668, 689 (9th Cir. 2001) (citation omitted).

### A. California State Court Documents

The Stipulation is expressly and extensively referenced in the First Amended Complaint. (ECF No. 7 at 4-6). Plaintiffs have not challenged its authenticity. Accordingly, the Court incorporates the Stipulation by reference. *See Parrino*, 146 F. 3d at 705-06; *see also Ritchie*, 342 F. 3d at 908.

Plaintiffs have not challenged the authenticity of the complaint filed in San Diego Superior Court or the judgment entered against Plaintiffs in favor of Defendant in San Diego Superior Court. Both the state court complaint and judgment bear the same case number as the Stipulation and relate to the same loans at issue in this case. Accordingly, the Court takes judicial notice of these documents. *See Hayes v. Woodford*, 444 F. Supp. 2d 1127, 1136-37 (S.D. Cal. 2006) (courts may take judicial notice of other courts’ proceedings if they “directly relate to matters before the court.”); *see also United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F. 2d 244, 248 (9th Cir. 1992 ); Fed. R. Evid. 210(b).

### B. Letters and Checks From Plaintiff Helen Truong to Defendant

The first letter submitted by Defendant, dated April 22, 2012, was accompanied by a check, also dated April 22, 2012, which was made payable to “Graham-Vaage & Cisheros client trust fund” in the amount of $3,150.00, and stated in the “memo” field: “Helen Truong payments Aug 2010-April 2012.” (ECF No. 9-2 at 33-34). The second letter submitted by Defendant, dated April 28, 2012, was accompanied by a check, dated April 29, 2012, which was made payable to “Graham-Vaage & Cisheros client trust fund” in the amount of $150.00

1 and stated in the "memo" field: "student loan payment May 2012." *Id.* at 36-37. Plaintiffs

2 have not challenged the authenticity of the checks or letters.

3    In the First Amended Complaint, Plaintiffs expressly referenced the April 22, 2012

4 check sent by Plaintiffs to Defendant, alleging that "[o]n or before April 27, 2012, in order to

5 cure the apparent default, and in a show of good faith, Plaintiffs sent Defendant a check in the

6 amount of $3,150.00, an amount far in excess of the $150.00 minimum required to cure."

7 (ECF No. 7 at 5).  Accordingly, the Court incorporates the check dated April 22, 2012 by

8 reference. *See Ritchie*, 342 F. 3d at 908.

9    The April 22, 2012 letter, the April 29, 2012 letter, and the April 28, 2012 check are not

10 referenced in the Complaint, and the Complaint does not "necessarily rel[y]" upon any of those

11 documents. *Parrino*, 146 F. 3d at 705-06.  Accordingly, the Court declines to incorporate the

12 April 22, 2012 letter, the April 29, 2012 letter, or the April 28, 2012 check by reference. *Id.*

13 **III.    Analysis**

14    Defendant contends that the First Amended Complaint should be dismissed on the

15 grounds that: (1) the *Rooker-Feldman* doctrine prevents the Court from exercising subject-

16 matter jurisdiction; (2) Defendant is immune from any liability pursuant to California Civil

17 Code § 47 and/or the *Noerr-Pennington* doctrine; and (3) Plaintiff has failed to state a claim

18 pursuant to Federal Rule of Civil Procedure 12(b)(6).

19    **A.    *Rooker-Feldman* doctrine**[1]

20    Defendant contends that the *Rooker-Feldman* doctrine bars this Court from exercising

21 subject-matter jurisdiction because Plaintiffs failed to object to the entry of judgment against

22 them in a related California state court action.  (ECF No. 9-1 at 8-9).  Defendant asserts: "The

23 *Rooker-Feldman* doctrine can apply even if the plaintiff has not explicitly referred to the state

24 court judgment, nor directly contested the merits of the judgment." *Id.* at 8.  Plaintiffs contend

25 that the *Rooker-Feldman* doctrine does apply to their FDCPA claim because "Plaintiffs are in

26 no way 'requesting relief from the state court judgment' as required under the *Rooker-Feldman*

27

28    [1]*See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)

doctrine." (ECF No. 11 at 10 (quoting *Carmona v. Carmona*, 603 F. 3d 1041, 1050 (9th Cir. 2010)). Plaintiffs assert that they are "challeng[ing] the acts and omissions of Defendant, and not those of the state court." *Id.*

*Rooker-Feldman* "is a narrow doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (quoting *Exxon Mobil v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 284 (2005)). The "doctrine applies only in 'limited circumstances,' *Exxon Mobil, supra,* at 291, where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance*, 546 U.S. at 466. The Court of Appeals for the Ninth Circuit has interpreted the *Rooker-Feldman* doctrine as follows:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction. If there is simultaneously pending federal and state court litigation between the two parties dealing with the same or related issues, the federal district in some circumstances may abstain or stay proceedings; or if there has been state court litigation that has already gone to judgment, the federal suit may be claim-precluded under § 1738. But in neither of these circumstances does *Rooker-Feldman* bar jurisdiction.

*Noel v. Hall*, 341 F. 3d 1148, 1164 (9th Cir. 2003). The district court lacks jurisdiction under *Rooker-Feldman* if "the federal plaintiff [is] seeking to set aside a state judgment," whereas there is jurisdiction if the federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party[.]" *Id.* (quoting *GASH Assoc. v. Village of Rosemont,* 995 F. 2d 726, 728-29 (7th Cir. 1993)).

In this case, Defendant submitted a document showing that judgment was entered in San Diego Superior Court, pursuant to the Stipulation, against Plaintiffs and in favor of Defendant.[2] The state court judgment, dated October 17, 2012, was not "rendered before the district court

---

[2]The San Diego Superior Court complaint and judgment submitted by Defendant bear the same case number as the Stipulation. In the First Amended Complaint and opposition to the Motion to Dismiss, Plaintiffs acknowledge that the Stipulation attached by Defendant to the Motion to Dismiss pertains to the same debt at issue in this case.

1  proceedings commenced" on July 6, 2012 with the filing of the Complaint in this Court.[3]

2  *Lance*, 546 U.S. at 464. Moreover, the First Amended Complaint does not allege "as a legal

3  wrong an allegedly erroneous decision by a state court," nor does it seek relief from a state

4  court judgment based upon that allegedly erroneous decision. *Noel,* 341 F. 3d at 1164. The

5  First Amended Complaint seeks to recover damages for alleged unlawful conduct prior to the

6  entry of judgment, which is "not a basis for abstaining under the *Rooker-Feldman* doctrine."

7  *Id.* The Court concludes that *Rooker-Feldman* does not bar Plaintiffs' FDCPA claim.

8        **B.    California Civil Code § 47 and the *Noerr-Pennington* Doctrine**[4]

9        Defendant next contends that it is immune from FDCPA liability in this case pursuant

10  to California Civil Code § 47(b) and the *Noerr-Pennington* doctrine. *Id.* at 13-14. Defendant

11  asserts that the allegations in the First Amended Complaint "are based upon acts taken by

12  [Defendant] during the pendency of, and in furtherance of, the state court lawsuit filed in

13  2005." (ECF No. 9-1 at 13). Plaintiffs contend that litigation privileges do not apply to

14  FDCPA claims. (ECF No. 11 at 12 (citing *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995)).

15        California Civil Code § 47(b) provides, in pertinent part, that a privilege attaches to a

16  publication or broadcast made in any judicial proceeding. Cal. Civ. Code § 47(b). The

17  litigation privilege "applies to any communication (1) made in judicial or quasi-judicial

18  proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects

19  of the litigation; and (4) that have some connection or logical relation to the action." *Silberg*

20  *v. Anderson*, 50 Cal. 3d 205, 212 (1990). Under the *Noerr-Pennington* doctrine, those who

21  petition any department of the government for redress are generally immune from statutory

22  liability for their petitioning conduct. *Empress LLC v. City & County of S.F.*, 419 F. 3d 1052,

23  1056 (9th Cir. 2005) (citing *Manistee Town Ctr. v. City of Glendale*, 227 F. 3d 1090, 1092 (9th

24  Cir. 2000)).

25

26        [3]The state court judgment was rendered after the First Amended Complaint was filed in this Court on September 4, 2012.

27

28        [4]*See Eastern R.R. Presidents Conf. v. Noerr Motor Freight. Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972).

In *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995), the United States Supreme Court held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Since *Heintz*, many courts within the Ninth Circuit have refused to apply either California Civil Code § 47(b) or the *Noerr-Pennington* doctrine to cases similar to this case. *See Santos v. LVNV Funding, LLC*, 5:11-CV-2683 EJD, 2012 WL 216398 (N.D. Cal. Jan. 24, 2012) ("The California litigation privilege ... does not apply to FDCPA claims."); *Welker v. Law Office of Horwitz*, 626 F. Supp. 2d 1068, 1072 (S.D. Cal. 2009) ("[T]he Court finds ample authority that [California Civil Code § 47(b)] should not be applied to claims arising under the FDCPA or California's Rosenthal Act."); *Sial v. Unifund CCR Partners*, 2008 WL 4079281, at *3-5 (S.D. Cal. Aug. 28, 2008) (holding that the *Noerr-Pennington* doctrine did not bar an FDCPA claim); *Gerber v. Citigroup, Inc.*, CIV S07-0785WBSJFMPS, 2009 WL 248094, at *4 (E.D. Cal. Jan. 29, 2009) report and recommendation adopted, 07CV0785 FCD JFM PS, 2009 WL 2058576 (E.D. Cal. July 14, 2009) ("This court is unpersuaded that the *Noerr-Pennington* doctrine bars actions under the FDCPA.... [T]he holding of *Heintz* strongly suggests that the *Noerr-Pennington* doctrine does not apply to FDCPA actions."); *Irwin v. Mascott*, 112 F. Supp. 2d 937 (N.D. Cal. 2000) (Debt collector's attorneys were not immune from civil liability under the FDCPA and the California Unfair Business Practices Act by virtue of their participation in administrative or judicial proceedings). In light of *Heintz* and its progeny, the Court concludes that neither the *Noerr-Pennington* doctrine nor California Civil Code § 47(b) shield Defendant from civil liability under the FDCPA.

## C.  Federal Rule of Civil Procedure 12(b)(6)

### 1.  Applicable Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal

theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F. 2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F. 3d 962, 969 (9th Cir. 2009) (quotations omitted).

### 2.      Contentions of the Parties

Defendant contends that the Court should dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim for a violation of the FDCPA. Defendant asserts that "all of the actions complained of arise solely out of state court litigation ... and a Stipulation [] in that action that was negotiated with Helen Truong after service of the summons and complaint...." (ECF No. 9-1 at 10). Defendant contends that the actions were done "in full conformity with the Stipulation between the parties, and thus [were] not false or misleading." *Id.* at 13. Defendant asserts:

> The Stipulation was drafted after the [state court] lawsuit was commenced, and as part of the litigation process. It allowed for repayment over a period of time upon the express condition that Plaintiffs not default in their agreed upon and clearly set forth monthly payments. ... Plaintiffs were well aware of their obligations as they made semi-regular payments for three years. As set forth above, Plaintiffs were also aware of the automatic acceleration provision and were further aware that they were not entitled to certain benefits, such as waived interest and a reduction in the principal balance, if they defaulted on any payment. The terms of the Stipulation clearly do NOT provide for a 'cure' allowing reinstatement of defaulted payments; instead, the full balance becomes automatically due immediately upon default. The only 'cure' referenced in the Stipulation is Plaintiffs' ability to make the full accelerated balance payment before a judgment is entered against them....

1    *Id.* at 10-11.  Defendant contends that the Stipulation was not vague and ambiguous and cannot

2    form the basis of an FDCPA claim.  *Id.*

3         Plaintiffs contend that the Motion to Dismiss should be denied because the Complaint

4    "adequately alleged a valid cause of action under the FDCPA" for false, deceptive, misleading,

5    unfair and unconscionable debt collection practices.  (ECF No. 11 at 19-21 (citing 15 U.S.C.

6    §§ 1692e, 1692e(10), 1692f, 1692f(1))).  Plaintiffs contend that "the terms of the Stipulation

7    are vague and ambiguous" under the FDCPA's "least sophisticated consumer" standard.  (ECF

8    No. 11 at 14-17).  Plaintiffs assert that the terms "default" and "cure" were not defined within

9    the Stipulation, and that Plaintiffs did not understand the meanings of those terms.  *Id.* at 15-

10   16.  Plaintiffs assert that they "interpreted Defendant's stipulation drastically different than

11   Defendant," and contend that all ambiguities must be construed against the drafter, i.e. the

12   Defendant.  *Id.* at 17.

13            **3.    Discussion**

14        The Stipulation entered into between Plaintiffs and Defendant in San Diego Superior

15   Court states[5], in pertinent part:

16            IT IS FURTHER STIPULATED AND AGREED that if the Defendants
             make all payments timely and as agreed upon as set forth above, Plaintiff agrees
17           to waive all accrued interest on this obligation from October 20, 2002, and
             further agrees to reduce the combined total principal balance by $2,000.00 to the
18           sum of $22,527.06.

19            IT IS FURTHER STIPULATED AND AGREED that this Stipulation for
             Entry of Judgment will be filed with the Court, however Judgment will not be
20           entered by this court unless a default has occurred as set forth herein.

21            IT IS FURTHER STIPULATED AND AGREED that in the event of
             default in any payment or performance as set forth in this Stipulation, the unpaid
22           balance shall be immediately accelerated and become due and payable.
             Additionally, in the event of Default and Defendants' failure to cure, Plaintiff
23           will be entitled to a Judgment for the entire unpaid balance, inclusive of the full
             combined principal balance, all accrued interest, Attorneys' Fees and Costs of
24           Suit incurred as set forth at Paragraph One herein....

25            IT IS FURTHER STIPULATED AND AGREED that Plaintiff agrees to
             first seek payments first from Helen Truong.  However, in the event of Default
26           and Defendants' failure to cure as set forth herein, Plaintiff shall seek
             enforcement from Defendants, jointly and severally, for payment of the
27

28            [5]In the Stipulation, Plaintiffs Helen Truong and Cuong K. Truong are identified as
         "Defendants," and Defendant Mountain Peaks Financial Services, Inc. is identified as "Plaintiff."

1   outstanding balance due and owing.  By executing this Stipulation for Judgment,
2   both Defendants agree that they are jointly and severally liable and that if a
    default occurs, Cuong K. Truong and Helen Truong will be responsible for the
3   entire unpaid balances due and owing.

4        IT IS FURTHER STIPULATED AND AGREED that in the event of
    default, written notice, by first class mail, postage pre-paid, or any other method
5   of delivery deemed faster than first-class mail, shall be sent to Defendant
    Helen[] Truong and Cuong K. Truong at 13384 Russet Leaf Lane, San Diego,
6   CA 92129.  Defendants shall promptly notify Plaintiff in writing of any change
    of address to which the notices may be sent.  Notice to the above address[] shall
7   be deemed proper unless Plaintiff is otherwise notified in writing at least ten
    (10) days prior to the default.  If the default is not cured within ten (10) days of
8   the date of said notice, then Plaintiff may proceed to have the judgment entered
    into by this Court, pursuant to the terms and conditions set forth herein.

9        IT IS FURTHER STIPULATED AND AGREED that Plaintiff may file
    a Declaration re Default in Payments, without further notice to Defendants and
10  Defendants waive their right to a hearing upon the entry of judgment and notice
    of application for entry of judgment....

11
         IT IS FURTHER STIPULATED AND AGREED that Defendants at all
12  times material hereto have had the opportunity to consult with legal counsel of
    their own choosing concerning their rights with respect to the form and content
13  of this Stipulation for Entry of Judgment and the advisability of executing same.

14  (ECF No. 9-3 at 25-28).

15       Plaintiffs have alleged that certain acts of the Defendant – including the drafting of the

16  Stipulation and acts taken pursuant to the Stipulation – violated five provisions of the FDCPA[6]:

17  section 1692e, which generally prohibits "false, deceptive or misleading" collection activities;

18  section 1692e(2)(A), prohibiting "[t]he false representation of ... the character, amount, or legal

19  status of any debt"; section 1692e(10), which forbids "the use of any false representation or

20  deceptive means to collect or attempt to collect any debt"; section 1692f, dealing with "unfair

21

22       [6]"Seeking somewhat to level the playing field between debtors and debt collectors, the
    FDCPA prohibits debt collectors from making false or misleading representations and from
23  engaging in various abusive and unfair practices." *Donohue v. Quick Collect, Inc.*, 592 F. 3d
    1027, 1030 (9th Cir. 2010) (citing 15 U.S.C. § 1692, et seq.).  "The FDCPA imposes strict
24  liability on creditors, including liability for violations that are not knowing or intentional."
    *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F. 3d 939, 952 (9th Cir. 2011)
25  (quotation omitted).  The FDCA defines debt as:

26       any obligation or alleged obligation of a consumer to pay money arising out of
         a transaction in which the money, property, insurance, or services which are the
27       subject of the transaction are primarily for personal, family, or household
         purposes, *whether or not such obligation has been reduced to judgment*.
28
    15 U.S.C. § 1692a(5) (emphasis added).

or unconscionable" methods of debt collection; and section 1692f(1), prohibiting "[t]he collection of any amount ... unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692, et seq.

"Whether conduct violates §§ 1692e or 1692f requires an objective analysis that takes into account whether the least sophisticated debtor would likely be misled by a communication." *Donohue*, 592 F.3d at 1030 (quotation omitted); *see also Wade v. Reg'l Credit Ass'n*, 87 F. 3d 1098, 1100 (9th Cir. 1996) ("For example, we shall find a violation of Section 1692e if [defendant's] letter and telephone call are likely to deceive or mislead a hypothetical 'least sophisticated debtor.'"). The "objective 'least sophisticated debtor' standard ... ensures that the FDCPA protects all consumers, the gullible as well as the shrewd, ... the ignorant, the unthinking, and the credulous." *McCollough*, 637 F.3d at 952 (quotation omitted). "At the same time, the standard 'preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care.'" *Gonzales v. Arrow Fin. Servs., LLC*, 660 F. 3d 1055, 1062 (9th Cir. 2011) (quoting *Rosenau v. Unifund Corp.*, 539 F. 3d 218, 221 (3d Cir. 2008)). The FDCPA does not subject debt collectors to liability for "bizarre," "idiosyncratic," or "peculiar" misinterpretations. *See Gonzales*, 660 F. 3d at 1062.

In the First Amended Complaint, Plaintiffs allege that "[o]n or about April 17, 2012, Plaintiffs were informed that they had supposedly defaulted on their monthly payment." (ECF No. 7 at 5). Plaintiffs allege that "[o]n or before April 27, 2012 in order to cure the apparent default, and in a show of good faith, Plaintiffs sent Defendant a check in the amount of $3,150.00, an amount far in excess of the $150.00 minimum required to cure." *Id.* Plaintiffs allege that they received a letter from Defendant on May 1, 2012, "rejecting the $3,150.00 payment and making a demand that Plaintiffs pay the unpaid balance of $28,438.50 in full." *Id.* Plaintiffs allege that the Defendant "used false representations or deceptive means to collect or attempt to collect a debt ..." by drafting the Stipulation "... in such a way that it appeared to the least sophisticated consumer to define such a 'cure' as the reinstatement of defaulted payments then in default, and no more." *Id.* at 4-5. Plaintiffs allege that the

Defendant, in sending the May 1, 2012 letter, "used false, deceptive, or misleading representation or means in connection with the collection of a debt," and "was collecting an amount ... when such amount was not expressly authorized by the agreement creating the debt or permitted by law." *Id.* at 5-6.

Based upon these allegations, the Court finds that Plaintiffs have adequately alleged facts to show that they would likely be misled by the Stipulation. The Court concludes that Plaintiffs have stated a "plausible claim for relief" for violation of the FDCPA, 15 U.S.C. § 1692, et seq. *Iqbal*, 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss"); *see also Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) ("If the least sophisticated debtor would 'likely be misled' by a communication from a debt collector, the debt collector has violated the Act."); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1171-72 (9th Cir. 2006) (explaining that the FDCPA, as a remedial statute, must be interpreted liberally). The Motion to Dismiss filed by Defendant pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied.

## MOTION FOR ATTORNEYS' FEES

### I.      Contentions of the Parties

Defendant contends that, under the anti-SLAPP statute, it is entitled to attorneys' fees and costs incurred in filing the Motion to Strike (ECF No. 5) because Plaintiffs amended their Complaint, and removed the RFDCPA claim, while the Motion to Strike was pending. (ECF No. 10-1 at 4). Defendant asserts that "[i]t is well established in California that a plaintiff may not avoid the mandatory attorneys' fee provision of [California Civil Code] § 425.16 by amending the complaint prior to the hearing on the anti-SLAPP Motion." *Id.*

Plaintiffs contend that the Motion for Attorneys' Fees should be denied "since (a) California's anti-SLAPP statute 'directly collides' with Federal law; (b) Defendant has failed to meet the required burden for California's anti-SLAPP statute; (c) Plaintiffs can satisfy their burden under California's anti-SLAPP statute; and, (d) Defendant's case law bears no relevance to the situation at bar." (ECF No. 12 at 9). Plaintiffs assert that "Defendant's anti-SLAPP Motion is completely devoid of any attempt to establish that the act or acts of which

Plaintiffs complain were taken in furtherance of Defendant's right of petition or free speech under the United States or California Constitution in connection with a public issue." Plaintiffs assert: "**Only** if the defendant initially established the suit is within the class of suits subject to Section 425.16 need the court reach the second step." *Id.*

## II.   Discussion

California's anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1); *see also Thomas v. Fry's Elecs., Inc.*, 400 F. 3d 1206, 1206 (9th Cir. 2005) (explaining that California anti-SLAPP motions to strike are available to litigants proceeding in federal court). "[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.15(c).

"[W]here the plaintiff voluntarily dismisses an alleged SLAPP suit while a special motion to strike is pending, the trial court has discretion to determine whether the defendant is the prevailing party for purposes of attorney's fees under section 425.16(c)." *Fleming v. Coverstone*, 08CV355 WQH (NLS), 2009 WL 764940, at *5 (S.D. Cal. Mar. 18, 2009) (quoting *Coltrain v. Shewalter,* 66 Cal. App. 4th 94, 107 (1998)); *see also ARP Pharmacy Servs., Inc. v. Gallagher Bassett Servs., Inc.,* 138 Cal. App. 4th 1307, 1323 (2006) ("A plaintiff may not avoid liability for attorney fees and costs by voluntarily dismissing a cause of action to which an anti-SLAPP motion is directed."). Similarly, "a plaintiff cannot amend a pleading to avoid a pending anti-SLAPP motion." *Fleming*, 2009 WL 764940, at *5 (quoting *ARP Pharm. Servs.,* 138 Cal. App. 4th at 1323); *see also Sylmar Air Conditioning v. Pueblo Contracting Servs.,* 122 Cal. App. 4th 1049, 1055 (2004) (rejecting plaintiff's argument that "an amendment of the complaint is qualitatively different than dismissal of the complaint and therefore it should not be treated similarly").

In the original Complaint filed in this case, Plaintiffs asserted a state law claim against

- 16 -

12CV01681-WQH-MDD

Defendant for violation of the Rosenthal Fair Debt Collection Practice Act ("RFDCPA") and a federal claim for violation of the FDCPA, as discussed above.  Defendant filed a Motion to Strike the RFDCPA claim.  Shortly thereafter, Plaintiffs filed the First Amended Complaint, which asserted an FDCPA claim, but not an RFDCPA claim, against Defendant.  In light of the First Amended Complaint, the Court denied Defendant's Motion to Strike as moot.  However, Plaintiffs may not "avoid a pending anti-SLAPP motion" by amending their Complaint to remove the RFDCPA claim while the Motion to Strike was pending. *Fleming*, 2009 WL 764940, at *5.  The Court must consider the merits of the Motion to Strike in determining whether to award costs and fees to the Defendant pursuant to the anti-SLAPP statute. *See Plevin v. City & County of S. F.*, C 11-02359 CW, 2011 WL 3240536 (N.D. Cal. July 29, 2011) ("The City's anti-SLAPP motion to strike is directed solely at Plaintiffs' state law claims. As noted above, Plaintiffs do not intend to assert these claims in an amended complaint, and the City's motion to strike them is denied as moot. The City, however, may seek attorneys' fees under the anti-SLAPP statute."); *see also Palermo v. Underground Solutions, Inc.*, 3:12-CV-01223-WQH, 2013 WL 310556 (S.D. Cal. Jan. 25, 2013).

In *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002), the Supreme Court of California explained:

> Section 425.16 posits ... a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (§ 425.16, subd. (b)(1).) 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)' (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043 [61 Cal.Rptr.2d 58]). If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (§ 425.16, subd. (b)(1)....

> [T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. (*Id.* at pp. 76-78.) Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. (*Id.* at p. 78.) In the anti-SLAPP context, the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity. (*Id.* at pp. 76-78; see also Briggs, supra, 19 Cal.4th at p. 1114; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1001 [113 Cal.Rptr.2d 625].)

In deciding whether the initial 'arising from' requirement is met, a court

considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)

*Navellier*, 29 Cal. 4th at 88-89.

The filing of Defendant's lawsuit against Plaintiffs in San Diego Superior Court is considered a "protected activity" under the anti-SLAPP statute. *See* Cal. Civ. Proc. Code § 425.16(e) (placing within the purview of section 425.16 "any written ... statement or writing made before a ... judicial proceeding," "any written ... statement or writing made in connection with an issue under consideration or review by a ... judicial body," and "any other conduct in furtherance of the exercise of the constitutional right of petition."); *see also Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 734 (2003) (filing a lawsuit is a protected activity under the anti-SLAPP statute). However, in the original Complaint filed in this Court, Plaintiffs alleged that the Defendant used fraudulent and misleading tactics, in violation of the RFDCPA, when it sent Plaintiffs the May 1, 2012 letter. (ECF No. 1 at 5). After examining the pleadings, declarations and exhibits filed in this case, the Court concludes that the Defendant has failed to "ma[ke] a threshold showing that the challenged cause of action is one arising from a protected activity," i.e. Defendant's act of filing the state court lawsuit, as opposed to some other event, such as Plaintiffs' receipt of the May 1, 2012 letter which rejected the $3,150.00 payment and demanded that the balance be paid in full. *Navellier*, 29 Cal. 4th at 88 (in determining whether the conduct "arose from" a protected activity, the court should consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."); *see also Hutton v. Law Offices of Collins & Lamore*, 668 F. Supp. 2d 1251, 1259 (S.D. Cal. 2009) ("There is no doubt that the Firm's Superior Court lawsuit against Hutton is protected activity, but there is plenty of doubt that that lawsuit, rather than the dunning letter, is what motivated Hutton to allege violations of the FDCPA.... It is the Firm's burden to demonstrate that the acts of which Hutton complains were taken in furtherance the Firm's right of petition, but the overwhelming gist of Hutton's FDCPA action is that the dunning letter, not the Superior Court action, is this inspiration behind the action. Ultimately, it is pure conjecture, based only on the timing of Hutton's present action vis-a-vis the dunning letter and the Firm's lawsuit against Hutton in Superior Court, that Hutton is using the FDCPA

1   to retaliate against the Firm for pursuing litigation against him."). The Motion for Attorneys'

2   Fees filed by Defendant is denied.

3                                            **CONCLUSION**

4           IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 9) filed by Defendant

5   is DENIED.  The Motion for Attorneys' Fees (ECF No. 10) filed by Defendant is DENIED.

6   DATED:  February 5, 2013

7                                          *William Q. Hayes*

8                                          **WILLIAM Q. HAYES**
                                            United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28